104 P.3d 984

**Mario NEPANUSENO, Plaintiff–Counterdefendant–Appellant,**

v.

**Scott H. HANSEN, individual, and Blaser, Sorensen Hansen, Chartered, Defendants–Counterclaimants–Respondents.**

No. 29176.

Court of Appeals of Idaho.

Nov. 23, 2004.

944

Richard D. Vance, Pocatello, for appellant.

Moffatt, Thomas, Barrett, Rock & Fields, Chtd., Idaho Falls, for respondents. Bradley J. Williams argued.

LANSING, Chief Judge.

This appeal arises from a legal malpractice action in which a jury found that the defendant, Scott Hansen, did not act negligently in providing legal services to the plaintiff, Mario Nepanuseno. On appeal, Nepanuseno contends that the district court erred in denying his motion for a new trial because there was insufficient evidence to support the jury's verdict. Specifically, Nepanuseno contends that Hansen admitted liability at trial and therefore the jury's verdict was contrary to the evidence. Nepanuseno also asserts error in the district court's imposition of sanctions against his counsel for failure to comply with a pretrial order. We affirm.

## I.

### FACTUAL AND PROCEDURAL BACKGROUND

In October 1996, Nepanuseno was working for H & K Contractors when he was involved in an industrial accident. At the time of the accident, Nepanuseno and a co-worker were unloading cement catch basins from a flatbed truck. Nepanuseno would attach a chain to the catch basin, and then the co-worker, using a backhoe, would lift the basin off of the truck. While Nepanuseno was attaching a chain to a catch basin, a hydraulic hose ruptured in the boom cylinder of the backhoe, causing the bucket of the backhoe to immediately fall to the ground. The bucket fell on Nepanuseno's arm, pinning it to the catch basin and causing permanent damage to the arm. In August 1997, Nepanuseno contacted Hansen to represent him in his worker's compensation case. Hansen agreed to the representation and later sent Nepanuseno an engagement letter confirming that Hansen would pursue Nepanuseno's worker's compensation claim and setting forth Hansen's fees for that work. Hansen did a substantial amount of work on Nepanuseno's case. In April 1999, Nepanuseno terminated Hansen as his attorney due to unresolvable conflicts.

In October 2000, Nepanuseno filed a legal malpractice claim against Hansen alleging that Hansen was negligent in failing to bring a products liability case against the manufacturer of the backhoe, John Deere, within the two-year statute of limitation. Nepanuseno claimed that had Hansen properly investigated, he would have discovered a claim against John Deere for product liability because the backhoe was defective in that it did not have a safety device to prevent the bucket from falling in case of a rupture in the hydraulic hose. Hansen denied liability and the case

proceeded to trial. At trial, Nepanuseno testified that he had told Hansen about the ruptured hose on the backhoe and that Hansen had agreed to file a products liability claim against John Deere. Nepanuseno argued that even if there was no express agreement to file a claim against John Deere, Hansen had a duty to investigate the circumstances surrounding the accident and discover the potential products liability claim.

In response, Hansen claimed that there was never any mention by him, or Nepanuseno, about any claims against John Deere, and that if he had agreed to represent Nepanuseno in such an action, it would have been included in the engagement letter which Hansen sent to Nepanuseno. Hansen also testified that Nepanuseno said nothing to him about the backhoe malfunctioning, but rather blamed the accident on his co-worker's mishandling the backhoe. At the conclusion of the trial, the jury found in favor of Hansen, concluding that Hansen was not negligent in his representation of Nepanuseno.

Subsequently, Nepanuseno filed a motion for a new trial, alleging that Hansen had admitted liability during the trial and that the evidence was insufficient to support the jury's verdict. The district court denied the motion. Nepanuseno appeals.

## II.

## ANALYSIS

### A. Motion for New Trial

■ On appeal, Nepanuseno argues that the district court erred in denying his motion for a new trial, which was based on Nepanuseno's contention that the weight of the evidence was against the verdict. A trial court has broad discretion when reviewing a motion for a new trial based upon insufficient evidence, and its decision will not be overturned on appeal absent an abuse of that discretion. *Fitzgerald v. Walker*, 121 Idaho 589, 593, 826 P.2d 1301, 1305 (1992). The trial court must weigh the trial evidence, including its own determination of the credibility of the witnesses, and grant the motion only where the verdict is not in accord with the court's assessment of the clear weight of the evidence. *Quick v. Crane*, 111 Idaho 759, 766, 727 P.2d 1187, 1194 (1986); *Evans v. State*, 135 Idaho 422, 430–31, 18 P.3d 227, 235–36 (Ct.App.2001). Before granting a motion for a new trial, the court must also conclude that a retrial would produce a different result. *Lanham v. Idaho Power Co.*, 130 Idaho 486, 498, 943 P.2d 912, 924 (1997); *Heitz v. Carroll*, 117 Idaho 373, 378, 788 P.2d 188, 193 (1990).

■ The elements of a legal malpractice action arising from a civil action are: (1) the existence of an attorney-client relationship; (2) the existence of a duty on the part of the lawyer; (3) the failure to perform that duty; and (4) the failure to perform the duty must be a proximate cause of the injuries suffered by the client. *Lamb v. Manweiler*, 129 Idaho 269, 272, 923 P.2d 976, 979 (1996); *Marias v. Marano*, 120 Idaho 11, 13, 813 P.2d 350, 352 (1991). In such an action, the plaintiff has the burden of proving negligence on the part of the attorney as well as proving that the negligence was the proximate cause of the loss of a right to recovery in the underlying case. *Samuel v. Hepworth, Nungester & Lezamiz, Inc.*, 134 Idaho 84, 88–89, 996 P.2d 303, 307–08 (2000); *Murray v. Farmers Ins. Co.*, 118 Idaho 224, 227, 796 P.2d 101, 104 (1990). To prove proximate cause, the plaintiff needs to establish that there would have been "some chance of success" in the underlying action but for the attorney's malpractice. *Jordan v. Beeks*, 135 Idaho 586, 591, 21 P.3d 908, 913 (2001); *Murray*, 118 Idaho at 227, 796 P.2d at 104. In his motion for a new trial, Nepanuseno contended that Hansen admitted negligence while testifying at trial and that the evidence presented at trial clearly showed that John Deere was at fault because there was no safety device on the backhoe to prevent this accident.

■ Some time after being discharged by Nepanuseno, and upon learning of the hose rupture, Hansen contacted the workers' compensation insurance company regarding the potential of a third-party claim against John Deere. At trial, Hansen testified that he was "relieved" to discover that the insurance company had investigated and determined that there was no viable claim against John

Deere. Nepanuseno argues that this testimony was an admission of liability by Hansen. In response, Hansen contends that (1) there was never any admission of liability at trial, and (2) that even if there had been an admission that Hansen failed in his duty of care, the evidence established that there would have been no chance of success in any action against John Deere because there were no economically feasible safety devices that would have prevented the accident.

We conclude that the district court did not abuse its discretion in denying Nepanuseno's motion for a new trial. While Hansen's acknowledgement of relief was relevant to the question of duty and breach of a duty, it was not an admission of a breach. Such a statement could have been interpreted in any number of ways and such was an issue to be determined by the jury.

■■■ Furthermore, even if we viewed Hansen's testimony as an admission of negligence, which we do not, Nepanuseno still had the burden of showing that he would have had "some chance" of succeeding in an action against John Deere. To succeed on a strict products liability claim, Nepanuseno would have had the burden of establishing, among other things, that the backhoe manufactured by John Deere was defective and unreasonably dangerous. *Corbridge v. Clark Equip. Co.*, 112 Idaho 85, 87, 730 P.2d 1005, 1007 (1986). This be can proved by presenting evidence of feasible alternative designs, available to the manufacturer at the time of manufacturing, which would have lessened the risk associated with the product. *Jackson v. Firestone Tire & Rubber Co.*, 788 F.2d 1070, 1076 (5th Cir.1986); *Bandstra v. Int'l Harvester Co.*, 367 N.W.2d 282, 288 (Iowa Ct. App.1985). If there were no feasible alternatives available, and the product is one which is useful and desirable to society, then the product is not defective or unreasonably dangerous but rather may be deemed "unavoidably unsafe," thereby exempting the seller from liability under a strict products liability theory. *Toner v. Lederle Labs.*, 112 Idaho 328, 336–37, 732 P.2d 297, 305–06 (1987).

At trial, Nepanuseno contended that John Deere would have been liable for his injuries because it did not have any safety devices in place to prevent the bucket of the backhoe from falling in the event of a failure in the hydraulics. In support of this, Nepanuseno presented evidence from his expert witness, an engineering professor, who testified that there were two devices in existence at the time the backhoe was manufactured which, if installed into the hydraulic systems, would have prevented the boom cylinder and bucket from dropping when the hydraulic hose ruptured. However, John Deere presented evidence from its own experts that the safety devices advanced by Nepanuseno could not physically be placed in the hydraulic systems of the backhoe, and even if they could have been, would have severely limited the utility of the backhoe. These experts also testified that the cost of incorporating such devices, if it were physically possible, would increase the cost of the backhoe by as much as fifty percent. Consequently, according to John Deere's experts, the safety devices proposed by Nepanuseno were neither technologically nor economically feasible. In addition, the qualifications of Nepanuseno's expert in the area of hydraulics was put into question at trial when he acknowledged that he had no experience, education, or training in the design or manufacture of backhoes and that his only prior experience with hydraulic systems, beyond classes taken in college, was in supervising a student's project involving the hydraulics in a spray applicator.

Accordingly, the great weight of the evidence presented at trial does not support Nepanuseno's assertion that the John Deere backhoe was defective and unreasonably dangerous. Because the jury's verdict rejecting Nepanuseno's claim for legal malpractice was not contrary to the weight of the evidence, the district court correctly denied Nepanuseno's motion for a new trial.

**B. Sanctions Against Counsel Imposed by District Court**

■■■ Nepanuseno also contends that the district court erred in awarding sanctions against his counsel for failure to comply with the court's pretrial order. The pretrial order set a deadline for disclosure of all experts one hundred fifty days prior to the May 7, 2002 trial date, or December 7, 2001. Nepa-

nuseno did not disclose his two expert witnesses, however, until February 2002. After Nepanuseno's late disclosure, Hansen filed a motion to strike the experts' testimony as sanctions for the untimely disclosure. In response, Nepanuseno's attorney, Richard Vance, represented that he suffered from severe dyslexia, which caused him to "mentally interpose the first week of May, the fifth month, with the last week of July, the seventh month," thereby incorrectly calendaring the trial date and the resulting deadlines.

In addressing Hansen's motion, the trial court noted that Vance presented no proof, by affidavit of a medical doctor or otherwise, to support his allegation of dyslexia. Although it was within the court's discretion to strike Nepanuseno's expert witnesses, as sought by Hansen, the court determined that such a sanction would be unfair to Nepanuseno, who was not responsible for his counsel's failure to meet deadlines. The court also found that monetary sanctions against Vance were appropriate, stating:

> At the same time, this Court is dismayed by Mr. Vance's lack of a back-up system for properly calendaring in light of his allegedly known dyslexia, which condition repeatedly causes Mr. Vance to interpose numbers and other symbols. Without a means of checking his own calendaring, Mr. Vance has a ready excuse for any failure to meet a deadline, whether the failure is related to his dyslexia or not. For these reasons, this Court finds a sanction against Mr. Vance is appropriate.

The trial court then granted Hansen's motion for sanctions pursuant to Idaho Rules of Civil Procedure 16(i) and 37(b)(2), ordering Vance to pay Hansen's attorney fees for preparation of Hansen's motion to strike and an associated motion for summary judgment.

On appeal, Nepanuseno argues that Idaho Rule of Civil Procedure 11(a)(1) does not authorize sanctions against counsel for discovery violations. This argument is irrelevant. The district court did not order sanctions under I.R.C.P. 11; rather, the court sanctioned counsel, for non-compliance with its pretrial discovery order, pursuant to I.R.C.P. 16(i) and 37(b)(2). These rules permit a court to sanction a party's attorney, by ordering payment of the other party's attorney fees, for violation of pretrial and discovery orders. *Priest v. Landon,* 135 Idaho 898, 900, 26 P.3d 1235, 1237 (Ct.App.2001); *Fish Haven Resort, Inc. v. Arnold,* 121 Idaho 118, 121, 822 P.2d 1015, 1018 (Ct.App.1991). Nepanuseno has not presented any argument that sanctions under these rules were inappropriate, and the record supports the district court's order. Therefore, the award of attorney fees against Nepanuseno's counsel, as a sanction for violation of the court's pretrial discovery order, is affirmed.

### C. Attorney Fees on Appeal

Hansen has requested an award of attorney fees on appeal pursuant to Idaho Code § 12–121. Attorney fees may be granted under that statute only if this Court is left with the abiding belief that the appeal was brought or pursued frivolously, unreasonably, and without foundation. *Pike v. Pike,* 139 Idaho 406, 409, 80 P.3d 342, 345 (Ct.App. 2003); *Damian v. Estate of Pina,* 132 Idaho 447, 450, 974 P.2d 93, 96 (Ct.App.1999). That standard for an award of fees is satisfied here where Nepanuseno has made no colorable showing that the district court misapplied the law and has merely asked this Court to second-guess the jury's findings in the face of very substantial evidence that supports the verdict. Therefore, we award attorney fees against Nepanuseno.

### D. Sanctions on Appeal

Hansen also requests sanctions on appeal against Nepanuseno's counsel under Idaho Appellate Rule 11.1. This rule includes a provision that the signature of an attorney on a notice of appeal or an appellate brief certifies that, to the best of the attorney's knowledge, information, and belief after reasonable inquiry, the notice of appeal or brief is (1) well grounded in fact and warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and (2) not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. For a violation of the rule, the appellate court may

impose sanctions upon the attorney. I.A.R. 11.1; *Painter v. Potlatch Corp.*, 138 Idaho 309, 63 P.3d 435 (2003). In *Painter*, the Idaho Supreme Court concluded that the issues raised by the appellant had dubious factual or legal foundations, and that none might in good faith call for change or adjustment in existing law, but the Court nevertheless declined to award sanctions because the second prong of Rule 11.1–that the appeal was brought for an improper purpose-was not also satisfied. *Id.* at 315, 63 P.3d at 441. Accordingly, under *Painter*, a request for sanctions requires that this Court consider whether both prongs of Rule 11.1 have been violated.

The appeal in the present case is patently frivolous. Casual review of the record shows that the jury's verdict was abundantly supported by the evidence. Therefore Nepanuseno's challenge to the denial of his motion for a new trial is not well grounded in fact nor warranted by existing law, and Nepanuseno makes no argument for any modification or reversal of applicable law. With regard to the portion of the appeal challenging the district court's award of sanctions against counsel, the appellant's brief does not even address the district court's grounds for the award. Therefore, counsel's signature on the notice of appeal and briefs violated the first certification under Rule 11.1.

The second question is whether the appeal was interposed for an improper purpose. In his reply brief, Nepanuseno did not respond to Hansen's request for sanctions under I.A.R. 11.1, nor did he express any reason why we should not conclude that the appeal was brought for an improper purpose. We cannot attribute this meritless appeal to mere overzealous representation of the client; in our view, no reasonable attorney examining the record would come to the conclusion that bringing an appeal would appropriately serve the plaintiff. We cannot discern any proper purpose for this appeal. Therefore, we will award sanctions against Nepanuseno's counsel under I.A.R. 11.1 for costs and attorney fees incurred by Hansen on appeal.

## III.

## CONCLUSION

The district court did not abuse its discretion in denying Nepanuseno's motion for a new trial nor in awarding sanctions against Nepanuseno's counsel for violation of the pretrial order. Accordingly, the order of the district court denying the motion is affirmed. Costs and attorney fees are also awarded on appeal against Nepanuseno and his counsel, Richard D. Vance.

Judge PERRY and Judge GUTIERREZ concur.